[File No. 6820]

REGIONAL AGRICULTURAL CREDIT CORPORATION, of Minneapolis, Minnesota, a Corporation, Respondent, v. GRIGGS COUNTY, NORTH DAKOTA, a public corporation et al., and GRIGGS COUNTY, NORTH DAKOTA, a public corporation, N. J. Thune, as sheriff of Griggs County, North Dakota, and Bert Nelson as Treasurer of Griggs County, North Dakota, Appellants.

(10 NW(2d) 861)

2

Opinion filed August 27, 1943

*M. W. Duffy,* for appellants.

*Nilles, Oehlert & Nilles,* for respondent.

Nuessle, J. This action was brought to recover from the defendant Griggs County certain moneys paid on account of the personal property taxes of one Skarloken. Judgment was ordered and entered for plaintiff and defendants Griggs County, N. J. Thune and Bert Nelson appeal.

The facts, as found and stated by the trial court, are substantially as follows:

In February, 1933, Skarloken made and delivered his note to the plaintiff for $1400 and, to secure it, executed a chattel mortgage upon certain of his personal property. The note and mortgage were renewed from time to time until September, 1940, when the mortgaged property was sold at public auction. This sale was held pursuant to an agreement between the plaintiff and Skarloken. It was agreed that the liens on the property should be transferred to and become liens on the proceeds of the sale and that one Brown should clerk the sale and receive the proceeds. At that time there remained unpaid on the mortgage debt the sum of $1066.95. At or prior to the time of the sale the sheriff and treasurer of Griggs County served notice on Brown that Skarloken owed personal property taxes for the years 1934 to 1940 inclusive, amounting to $120.97. They demanded that Brown pay

the full amount of these taxes out of the proceeds of the sale. Plaintiff and Brown were notified that unless this was done the sheriff would distrain and seize the property. Thereupon Brown paid all the taxes and accrued penalties to the sheriff, excepting $16.58, which he holds awaiting the result on this appeal. This payment was made under protest on the ground that the county had no valid lien for the whole amount of these taxes on the property or the proceeds of the sale. The property sold at the sale for $1101.00.

Plaintiff in this action seeks judgment, decreeing it is the owner of the $16.58 still in the hands of Brown, and also seeks to recover $27.09 of the money paid under protest to the sheriff and the treasurer. In that behalf, plaintiff contends that of the taxes demanded ($120.97) the county had no valid lien for $43.67 thereof superior to the plaintiff's lien on the property which was sold. That is, plaintiff contends that the amount demanded by the county included the following tax items assessed against property in classifications other than those covering the mortgaged property and which therefore were not valid and superior liens on the property sold, towit:

| | |
|---|---|
| Per capita school taxes included in tax statement for the years 1934 to 1940 inclusive | $11.00 |
| On household goods listed in classification (#7) in personal property return | 5.40 |
| On clothing and other personal belongings listed in classification (#8) | 4.60 |
| On tractors and separators included in tax return under classifications (#6A and #6B) | 17.92 |
| On sheep and hogs listed under classifications (#3 and #4) | 2.75 |
| On other livestock listed in tax return under classification (#5) | 2.00 |
| Total | $43.67 |

So the question here at issue is as to whether the appellant County had tax liens superior to the plaintiff's mortgage for school polls and for taxes levied and assessed against personal property included in

classifications other than the classifications covering the personal property sold at the auction. The determination of this question requires a consideration of §§ 2171, and 2166 and 2186, Comp. Laws 1913, as amended, and chapter 279, Session Laws 1931.

Sections 2166, 2171 and 2186, have heretofore been construed and applied in the cases of Advance Thresher Co. v. Beck, 21 ND 55, 128 NW 315, Ann Cas 1913B 517 (opinion filed October 13, 1910); First Nat. Bank v. Kelly, 36 ND 546, 162 NW 901 (opinion filed April 28, 1917); Baird v. Belcher, 59 ND 559, 231 NW 548 (opinion filed June 28, 1930) and International Harvester Co. v. Elhard, 61 ND 443, 238 NW 551 (opinion filed October 17, 1931).

In the Beck Case we held that under the statutes as they then read, the county had a lien against a specific personal property only for taxes levied against a valuation of property of the same class.

In the Kelly Case we approved and followed the Beck Case and further held that the lien of a mortgage on personal property was superior to the preference right of the county to sell the property for the personal property taxes of the tax debtor, assessed against a valuation of other classes of personal property.

In the Belcher Case we reviewed the Beck and Kelly Cases, approved the holdings therein, and further held that the tax lien upon specific chattels for personal taxes of the owner was a lien for the purpose of distraint, only so long as the property belonged to the tax debtor and did not follow it into the hands of a subsequent purchaser. In that case, Judge Birdzell, writing the opinion, reviewing the Beck and Kelly Cases and the statutes, said—(we quote at length since the pertinent portions of the statutes are set out therein).

"The appellant presents as the sole question involved on the appeal this query: Does a purchaser of personal property take the property free and clear from the lien of taxes specifically assessed against it so as to render it immune from distraint by the sheriff for the taxes of the vendor? It is contended by the appellant that under the provisions of § 2166, Comp. Laws 1913, as amended by § 3, chapter 241, Session Laws of 1929, personal property of a tax debtor passes into the hands of a purchaser subject to the lien of the tax assessed against the class or classes in which the particular property had been assessed. That

portion of the statute relied upon reads as follows: '. . . provided that all personal property taxes shall be a lien upon the property assessed from and after the date upon which assessment is made and it shall be the duty of the sheriff when any person to whom personal property shall have been assessed is, in his opinion, about to sell, barter or remove said property from the county, to collect such taxes at any time after the property shall have been assessed.' Before this proviso, however, the statute makes it the duty of the sheriff to proceed with the collection of delinquent taxes and directs him to 'distrain sufficient goods and chattels belonging to the person, firm or corporation charged with such taxes if found within the county to pay the same.' Two additional sections bearing quite directly upon the question involved are §§ 2171 and 2186, Complied Laws of 1913 which read:

'Section 2171. The right of the state and each and every county thereof to enforce the collection of personal property taxes shall take and have precedence of any and all liens on or against personal property of a tax debtor, provided, that any person holding a lien on personal property of any tax debtor may demand and require the property of the tax debtor not covered by a lien to be first exhausted in the payment of such taxes.'

'Section 2186. Taxes upon real property are hereby made a perpetual paramount lien thereupon against all persons and bodies corporate, except the United States and the state, and taxes due from any person upon personal property shall be a lien upon any and all personal property owned by him at the time the tax became due, or which may be subsequently acquired by him, and the title to any of which personal property so owned or subsequently acquired remains in him at the time of the distraint. All taxes shall, as between vendor and purchaser, become a lien upon real estate on and after the 31st day of December in each year.' " (The latter section is quoted as amended by chapter 241, Session Laws of 1929, in a minor particular not affecting the question in hand.)

The foregoing sections must, if possible, be given a harmonious construction so that if there be manifested in them a legislative intention that a lien for personal property taxes shall attach at a given time and remain enforceable against the specific property taxed or property of

the same classification in the assessment, as against the tax debtor or as against any subsequent purchaser, the contention of the appellant must be upheld. If, on the other hand, the lien declared in § 2166 appears to have been created for the purpose of enabling the collection of the tax in the prescribed manner and in circumstances limited by the continued ownership by the tax debtor, the judgment must be affirmed.

Upon a former occasion when §§ 2171 and 2186 were before this court for construction in a proceeding involving the priority of a chattel mortgage over the lien of personal taxes assessed on account of property other than that covered by the mortgage and in a different class in the assessment, these two sections were commented on, as follows (First Nat. Bank v. Kelly, 36 ND 546, 162 NW 901, at page 550 of the state report):

"Section 2186 is the older of the two statutes above quoted (the other being 2171) and from an examination of its provisions it is apparent that it is intended to create a tax lien upon personal property owned by the tax debtor for the sole purpose of enabling the collection of the tax by distraint, and not for the purpose of preventing a sale free from the taxes before the property is levied upon for their collection. The statute purports to make the taxes owing by a tax debtor a lien, not only against the personal property 'owned by him at the time the taxes become due' but also against that which 'may be subsequently acquired by him'. The purpose of a provision which thus extends the lien of the tax to property regardless of whether or not it was owned by the tax debtor at the time of the assessment could be none other than a desire to render all such property subject to distraint. That the legislature did not intend all the consequences of a lien to attach is very apparent from the fact that the so-called lien was limited by the continued ownership of the property by the tax debtor. There can be little doubt that it was owing to the very inadequacy of § 2186 to establish an absolute lien for taxes as against the personal property owned by the tax debtor, that § 2171 above quoted was passed."

In that case the lien of so much of the taxes as resulted from the assessment of the item upon which the plaintiff held the chattel mortgage was conceded to be superior to the mortgage—made so by § 2171. . This property was still owned by the tax debtor, but the remainder of the

property assessed had been disposed of, and it was held, following Advance Thresher Co. v. Beck, 21 ND 55, 128 NW 315, Ann Cas 1913B 517, that the lien for so much of the tax as was based upon the assessment of other items which had been disposed of was not superior to the mortgage upon the item still retained by the tax debtor.

As to the property disposed of it was said that section 2186 created the lien for the purpose of enabling the collection of the tax by distraint and not for the purpose of preventing a sale free from the taxes before the property would be levied upon for their collection. If this be a correct construction and if § 2166 may be harmonized with it, it is decisive of the case at bar.

Referring now to § 2166, it will be noted that the sheriff is directed to distrain sufficient goods and chattels *belonging to the tax debtor* and that in that portion of the statute where it is provided that all personal taxes shall be a lien upon the property assessed from the date of the assessment, there is linked with the lien declaration a provision making it the duty of the sheriff to collect the taxes at any time after the property shall have been assessed when in his opinion such person is about to sell, barter or remove the property from the county. In other words, the remedy provided is distraint and it is made effective for purposes of immediate collection after assessment when in the opinion of the sheriff a step is about to be taken by the tax debtor which might embarrass the ultimate collection of personal taxes. Distraint is the taking of a chattel from the possession of a wrongdoer or obligor to enforce the performance of an obligation. See Bouvier's Law Dict. It does not authorize the taking of property of one person to satisfy the obligation of another. Our statutes, §§ 2166 and 2186, supra, were evidently drawn with this characteristic of the remedy in mind for they direct distraint only of goods belonging to the tax debtor at the time of the distraint. The clear implication is that the remedy is not to be resorted to if the property no longer belongs to the tax debtor. It implies that a sale may be made which will remove the property assessed from the operation of a distress warrant. If the construction contended for by the appellant be adopted, it would render that portion of the statute declaring the lien to exist repugnant to that portion of the same section which directs proceedings by distraint as well as to the kindred pro-

visions of § 2186. Since these sections should, if possible, be given a harmonious construction, and since this can be accomplished only by holding, as heretofore, that the lien declared is for the purpose of making the remedy of distraint applicable, and that this remedy to be available must be resorted to while the property is owned by the tax debtor, we adhere to that construction."

In the Elhard Case we held that the rule of the Belcher Case was applicable where personal property had been sold on conditional sales contract and had been retaken by the vendor and resold to another. While this opinion was not filed until October 17, 1931, the case was begun and tried in the district court prior to the enactment of chapter 279, Session Laws 1931, and so on appeal it was not necessary to consider the effect of the latter chapter.

In the instant case, the appellants predicate their appeal largely upon the provisions of chapter 279, Session Laws 1931, amending and enlarging § 2166, 1925 Supplement, as amended (chapter 241, Session Laws 1929) and § 2186, Comp. Laws 1913, as amended (chapter 241, Session Laws 1929).

The particular provisions of chapter 279, supra, affecting § 2166, as amended, important here and on which the appellants rely are, first the elision from subsection (e) of § 3 of chapter 241, Session Laws 1929 of the proviso ". . . that all personal property taxes shall be a lien upon the property assessed from and after the date upon which assessment is made and it shall be the duty of the sheriff when any person to whom personal property shall have been assessed is, in his opinion, about to sell, barter, or remove said property from the county, to collect such taxes at any time after the property shall have been assessed;" and, second, § 2 of said chapter 279, the first two paragraphs of which, read as follows:

"Personal property taxes shall for the purpose of distraint be a lien upon all the personal property in possession of the person assessed from and after the date when the assessment is made, and when the Sheriff shall discover that any person, after his property is assessed, and before the tax thereon is paid, is about to sell, barter or remove his property from the County, without leaving sufficient therein to pay such taxes,

he shall at once proceed to collect such taxes by distraint and sale of such property if, upon demand, the taxes are not paid.

"And if any person (including firm or corporation) after his personal property is assessed and before the taxes thereon are paid, shall sell or transfer all of his personal property to any one person and not retain sufficient to pay the taxes thereon, such taxes shall be a lien upon the property so sold or transferred, and shall at once become due and payable, and the sheriff shall forthwith collect such taxes by distraint and sale of the property if, upon demand, the taxes are not paid. The person owing such tax shall be civilly liable to the purchaser of such property for any taxes which he owes thereon, but the property so purchased or transferred shall be liable in the hands of the purchaser or vendee for such tax."

And the particular provisions of chapter 279 as affecting § 2186 and upon which the appellants rely, are, first the elision from § 2186 of the clause "and taxes due from any person upon personal property shall be a lien upon any and all personal property owned by him at the time the taxes became due, or which may be subsequently acquired by him, *and the title to any of which personal property so owned or subsequently acquired remains in him at the time of the distraint.";* and, second, §§ 4 and 7 of said chapter 279, providing:

"Section 4. Taxes assessed upon personal property such as buildings, assessed as personalty, tractors, combines, threshing machines or other personal property, or items or (of) personal property, having been individually and specifically assessed shall be a paramount lien upon such property from and after the date when such assessment is made and no sale or transfer or (of) such individually and specifically assessed personal property shall in any way affect the lien for taxes thereon."

"Section 7. No personal property sold or transferred under a conditional sales contract shall be attached, repossessed, or acquired, by bill of sale, by the owner, holder or assignee of such conditional sales contract on account of cancellation or foreclosure of such contract until the taxes levied upon such personal property have been fully paid."

The trial court held, and, after a meticulous examination of the cases and of the statutes above referred to, we think rightly, that the amend-

ments and additions incorporated in chapter 279 did not have the effect of changing the rules announced in the Beck and Kelly Cases. It is to be noted there is no specific mention in chapter 279 of mortgages, or of the rights of mortgagees as against tax charges or with respect to the rules of the Beck and Kelly Cases. On the other hand, there is particular reference to tax liens on property in the hands of purchasers from the person in whose possession the property was from and after the time the taxes were assessed (§§ 2 and 4, supra,) and on personal property sold or transferred under conditional sales contracts and repossessed and sold after the taxes were assessed (§ 7, supra).

It is further to be noted that the Belcher Case turns largely upon the proviso in subsection (e) of § 2166 as amended "that all personal property taxes shall be a lien upon the property assessed from and after the date on which assessment is made . . ." and that part of § 2186, reading ". . . . and taxes due from any person upon personal property shall be a lien upon any and all personal property owned by him at the time the tax became due or which may be subsequently acquired by him, *and the title to any of which personal property so owned or subsequently acquired remains in him at the time of the distraint.*" In this connection the provisions of § 2 of chapter 279, heretofore quoted, are most pertinent. While the portion of § 2186, above quoted, was elided by § 3 of chapter 279, that part of it not italicized was in effect re-enacted in § 2 of that chapter. Clearly these enactments were designed to change the pre-existing statutes so that the tax lien on distraint should be available as against property in the hands of purchasers from those who owned it at the time of the assessment. And the inference is inescapable that these changes were made on account of the holdings in the Belcher and Elhard Cases and not on account of the Beck and Kelly Cases. Likewise the provisions of § 4, above quoted, declare plainly in favor of such a conclusion.

Of course our duty is to ascertain the legislative intent. In view of the fact that the amendments and enlargements contained in chapter 279, supra, clearly were enacted with the evident purposes hereinbefore set out and, though the holdings in the Kelly and Beck Cases long had been in effect, no express reference was made to mortgages and mortgagees and their rights as against the claims of the taxing author-

ities for priority in those cases where the taxes sought to be collected were assessed on property in other classifications, we must hold that the legislature did not intend to give tax liens priority over mortgages in such cases.

Appellants urge against the foregoing construction that by it mortgagees are preferred as against purchasers; that purchasers, however innocent, take subject to the lien of all accrued personal property taxes, while mortgagees have priority as against all tax liens except for taxes assessed on the particular property mortgaged or on property in the classifications within which the mortgaged property falls; and that the legislature could not have intended such a discrimination. If there be force to such an argument, then appellants are hoist with their own petard. There is no discrimination in favor of mortgagees. There would be discrimination however if the construction, for which appellants contend, were adopted—but against mortgagees. For, one who purchases can protect himself by an examination of the tax records, but if the rule for which the appellants contend should prevail, one who takes a mortgage upon personal property might be burdened with taxes subsequently accruing on property in other classifications than that in which the mortgaged property is included. And, in this connection, it is especially to be noted that the second paragraph of § 2, above quoted, expressly provides that in case the purchaser is required to pay taxes assessed against his vendor "The person owing such tax shall be civilly liable to the purchaser of such property for any taxes which he owes thereon, but the property so purchased or transferred shall be liable in the hands of the purchaser or vendee for such tax" and there is no provision to safeguard mortgagees. Nor need the taxing districts suffer because of the construction we have put upon the statute. After all, if the officers charged with the duty of collecting personal property taxes are diligent in the performance of that duty there can be no hardship so far as the tax beneficiaries are concerned.

Appellants further urge that the sale of the mortgaged property in the instant case was invalid because the requirements imposed by the statute, chapter 183, Session Laws 1917, respecting the sale of property at auction were not complied with. This statute was amended by chapter 120, Session Laws 1921 and, as amended, appears as § 6001a1,

1925 Supplement. Appellants, however, say that chapter 120 was not validly enacted and therefore chapter 183 is still in effect. (However we need not and do not give attention to this latter point as in the view we take of the issue here it is immaterial whether there was a valid amendment.) They also insist that § 6 of chapter 279, Session Laws 1931, requires notice of the sale of mortgaged property to be given and that this requirement was not complied with in the instant case; that because of noncompliance with these statutes the sale was invalid, the plaintiff's lien lost, and accordingly the county's tax lien is the first lien on the proceeds of the sale. We are unable to agree. While the record does not affirmatively show notice as required by these statutes, yet we must presume it was given for it does show that the treasurer and the sheriff had notice of the sale, and because of that notice acted to protect the county's interest by requiring the payment of the taxes claimed to be due before the sale could be made. That, in fact, was the reason why the tax payment was made to the county authorities under protest—in order to prevent a distraint of the property to be sold and to enable the sale to be carried on. Accordingly, we see no merit in the appellants' contention in this regard. The purpose contemplated by the statute was accomplished. All the steps that could have been taken by the treasurer and the sheriff were taken. The amount demanded was paid or impounded because of their action, subject to the disposition of the instant case.

The appellants also contend that when the plaintiff Credit Corporation agreed with Skarloken that the mortgaged property might be sold at public auction, it thereby waived its rights under its mortgages. Here, too, we must disagree with the appellants. As to whether or not there was a waiver depends upon the intention of the plaintiff when it entered into the agreement. Rolette State Bank v. Minnekota Elevator Co. 50 ND 141, 195 NW 6. Clearly, there was no intention that the lien should be waived. The agreement was that the lien should be transferred to and become operative on the proceeds of the sale and that Brown who, by mutual agreement was the clerk of the sale, should discharge the lien out of the proceeds, if it were possible to do so. The proceeds were in no event to go to Skarloken. Brown was under obligation to recognize the lien of the mortgage and to discharge it if the

net proceeds were sufficient to enable this to be done. See also in this connection, Shortridge v. Sturdivant, 32 ND 154, 155 NW 20; Arnold v. First Nat. Bank, 96 Colo 104, 39 P(2d) 791, 97 ALR 643; 10 Am Jur 849, Chattel Mortgages, §§ 202 et seq; Wilson v. Geiss, 153 Minn 211, 190 NW 61.

There remains but one other contention urged by appellants to be disposed of. That is, that in any event the plaintiff can have no recovery for the sum of $17.92, the tax on tractors and separators listed under Classifications #6A and 6B. The point made is that these are not in fact specific classifications but are merely subclassifications of farm machinery to be assessed together under Classification #6. The statute, § 2094, 1925 Supplement, requires that the tax commissioner shall prescribe the classification under which personal property shall be listed for tax purposes. Pursuant to this statute he required farm and ranch equipment to be listed under Classification #6, as follows:

A. Tractors
B. Separators
C. Combines
D. All other farm machinery, equipment, tools, wagons, harness, etc.

We think that when the tax commissioner thus designated the manner is which farm and ranch equipment should be listed this amounted to a classification of such property as required a separate and specific assessment of the same under these several subdivisions, and that accordingly they are so classified as to preclude the appellant from claiming a superior lien on property listed in sub-class #6D to-wit: "All other farm machinery, etc." on account of taxes on tractors and separators listed in sub-classes #6A and #6B. See, § 4 of chapter 279, supra, as further warranting this conclusion. As stated in First Nat. Bank v. Kelly, 36 ND 546, 162 NW 901, supra, the lien on distraint is a lien to the extent of the taxes assessed and levied on property included in the same class as one indivisible item in the assessment list.

Judgment affirmed.

MORRIS, Ch.J., and BURKE, CHRISTIANSON, BURR, JJ., concur.